J. A. SCHUTTLOFFEL v. ELLEN COLLINS, *et al.*, Appellants.

**Homestead: PROCEEDS:** *Intention.* The exemption of the proceeds of the sale of a homestead, made with the intention of purchasing another, is not lost because the vendor has some slight intention of investing the proceeds in another state, under Code, section 2000, authorizing an entire change of the homestead by the owner.

*Same.* That a payment for a homestead, sold with the intention of purchasing another, is not made until eight months after the sale, and that the husband dies during the meantime, does not take away the exempt character of such money so as to deprive the widow from investing the same in a house for herself and children.

*Appeal from Plymouth District Court.*— Hon. J. F.
Oliver, Judge.

TUESDAY, MAY 26, 1896.

SUIT in equity for the specific performance of a
written contract for the sale of certain real estate.
There was a decree for the plaintiff; and there was a
matter of dispute as to the right to part of the pur-
chase money, among the defendants. The court, by
its decree, awarded the money in dispute to the
defendants, who are creditors of the vendors, and the
other defendants appeal. The facts appear in the
opinion.—*Reversed.*

*Ira T. Martin* for appellants.

*Zink & Roseberry, M. Wakefield, E. S. Lloyd,* and
*I. S. Struble* for appellee.

ROTHROCK, C. J.—I.   On the thirtieth day of June,
1894, Thomas Collins was the owner of a farm of one
hundred and sixty acres in Plymouth county.   He
resided on the farm with his wife and two children.
On the day above mentioned, he and his wife entered
into a written contract with the plaintiff herein, by
which they sold the farm to the plaintiff for the sum
of six thousand and eighty dollars.   A small amount
of money was paid in cash at the time the contract
was executed.   There were two mortgages on the land,
for the aggregate sum of four thousand four hundred
dollars, which the purchaser assumed to pay.   In July
of the same year, plaintiff paid to Collins the sum of
six hundred dollars, and the balance due was to be
paid March 1, 1895.   This balance amounted to four
hundred and fourteen dollars and ninety-six cents.
There is no dispute about this amount.   After the

written contract was entered into, Collins and his family continued to reside on the farm, until his death, which occurred on the twenty-ninth day of September, 1894. The family continued to occupy the farm as a home until about the first of November, in the same year, when the dwelling house burned down, and they could no longer remain in actual occupancy of the land. After the contract of sale was made and delivered, the defendants Keogan Bros., O. A. Terpaning, and Henry Schaafe commenced actions against said Thomas Collins, and recovered judgments against· him. These judgments were rendered before his death, and while he and his family were residing on the farm. The defendant Ellen Collins was appointed administratrix of the estate of her husband. This action in equity, for a specific performance of the contract, was commenced November 22, 1894, and the administratrix and her children and the said judgment creditors were made parties. No objection was at any time taken to the form of the action. The judgment creditors appeared, and answered by setting up their judgments, and claiming that they were a lien on the land, or on the balance of the purchase money which was yet unpaid. The widow, in behalf of herself and her children, claimed that the transaction in disposing of the farm was but one step in the change of their homestead, and that the proceeds of the sale of the homestead were not liable for the debts of the husband. The widow also claimed that it was her right to be endowed with the unpaid purchase money, as being the proceeds of her dower or distributive share of the land.

These being the issues, a stipulation was made by all the parties, by which the farm was conveyed to the plaintiff, and the balance of the purchase money deposited in a bank, to await the decision of the court, as to whether it should be paid to the widow or to the

judgment creditors. The court awarded it to the creditors. Some question is made in the pleadings as to whether the debts upon which the judgments were founded, were contracted before the homestead was acquired, so that the homestead would be liable in any event. But that question was not presented on the trial, nor in argument, and we do not consider it. It appears to be conceded that, if the farm had not been sold, the homestead would not have been liable for the debts. There is some discussion among counsel as to the form of the action, and whether it is in probate, in equity, or at law. This is of no consequence now. The action was commenced as in equity, and it was tried to the court without a jury, and no objection was at any time made to the proceedings. It will be determined here as an appeal in an equity case.

II. There is but one question which we think necessary to be considered in determining the rights of the parties. It arises under section 2000 of the Code, which is as follows: "The owner may from time to time change the limits of the homestead by changing the metes and bounds, as well as the record of the plat and description, or he may change it entirely, but such changes shall not prejudice conveyances or liens made or created previously thereto, and no such change of the entire homestead made without the concurrence of the husband or wife shall affect his or her right, or those of the children." And section 2001 provides that the new homestead, to the extent in value of the old, is exempt from execution in all cases where the former would have been exempt. There was no abandonment of the homestead by the husband. If he had survived, and purchased another home, it would have been exempt the same as the old homestead. The judgments were not liens on the homesteads, nor on

the purchase money, not then due, nor paid while the husband lived. There was no voluntary abandonment of the homestead by the family. The question of fact in the case is, was it the intention of the husband and wife to use the proceeds of the sale for the acquisition of a new homestead? If so, the money was exempt from the claims of the creditors of the husband. We will not review the evidence on this question. We think it shows by a fair preponderance that it was the intention of the husband and wife to acquire a new homestead. It is true, he went into the state of Minnesota, and examined land, with a possible view of purchasing a home there; and the state of Nebraska was considered. But attention was mainly directed to procuring a home in this state. As the homestead law has always been liberally construed, we do not think it ought to be held, under the facts of this case, that the creditors should take this homestead money, because, if the husband had lived, he might have invested it in another state. When a party sells his homestead, with the intention of purchasing a new one, he will be allowed a sufficient time within which to exercise that right. *Benham v. Chamberlain*, 39 Iowa, 358. The act of acquiring a new homestead, and moving into it, cannot be simultaneous. The owner should be allowed a reasonable time to make the change. *Cowgell v. Warrington*, 66 Iowa, 666 (24 N. W. Rep. 266). It is not necessary that the old homestead be sold for cash, which is immediately invested in a new one. The sale may be on time, and, if the intention is to invest the proceeds, when realized, in the new homestead, such proceeds will be exempt. *State v. Geddis*, 44 Iowa, 537. In the last-named case, creditors attempted to garnish the proceeds of the homestead more than two years after it was sold.

Some question is made as to the value of the homestead as compared with the purchase money in controversy. It is true that there is no direct evidence as to the value of the homestead forty acres, apart from the whole of the farm; but it is averred in the answer and cross-petition of the widow that it was of the value of two thousand dollars. Two of the creditors, in their answers, assert that it was worth to exceed one thousand four hundred dollars. In view of the fact that the farm was sold for thirty-eight dollars an acre, it may be said that the evidence shows beyond all question that the homestead was worth more than four hundred and fourteen dollars and ninety-six cents, the amount in controversy. Our conclusion is that Mrs. Collins should be allowed to take this money and apply it in procuring a home for herself and her children, as was intended by her husband and herself. The decree of the district court is REVERSED.