### In re JOHNSON.

#### (District Court, N. D. Iowa, E. D.   November 8, 1902.)

1. HOMESTEAD—CHANGE FROM ONE PROPERTY TO ANOTHER—IOWA STATUTE.
   The homestead statute of Iowa (Code, § 2981), as construed by its supreme court, permits a change of homesteads from one piece of property to another, and the new homestead, to the extent in value of the old, is exempt from all debts which could not have been enforced against the old, although contracted before the change was made.

2. BANKRUPTCY—HOMESTEAD EXEMPTION—PROCEEDS OF FORMER HOMESTEAD.
   A bankrupt had sold together, for the nominal price of $4,500, two pieces of realty, one of which was his homestead, which was valued in the sale at $900. He took a note for a part of the purchase money, which he later contracted to sell at a discount; his trustee ratifying such contract by collecting the agreed price therefor. *Held*, that on the bankrupt's application to have the proceeds of his homestead set apart to him therefrom as exempt, to be invested in a new homestead, as permitted by the law of the state, a proportionate part of the discount should be deducted from the price nominally received for the homestead.

In Bankruptcy.   On exceptions to ruling of referee on question of homestead rights.

Henderson, Hurd, Lenehan & Kiesel, for bankrupt.
V. T. Price and J. E. Corlett, for creditor.

SHIRAS, District Judge.   The question at issue in this case arises between the bankrupt and one Dan Wolf, a creditor, whose claim, in the sum of $1,585.06, has been duly proved and allowed by the referee.

Upon the allowance of the claim, the creditor Wolf filed a petition before the referee, asking that the sum of $900, in the hands of the trustee, and claimed by the bankrupt to be the proceeds of the sale of his homestead, should be appropriated by the trustee to the payment of his claim on the ground that the debt due him had been incurred by the bankrupt before the acquisition of the homestead right, and therefore, under the provisions of the Code of Iowa, the homestead and its proceeds were not exempt from liability for the claim of petitioner.

¶ 1. See Homestead, vol. 25, Cent. Dig. §§ 81, 112, 139.

From the evidence submitted on the hearing, the referee found the facts to be as follows:

"That bankrupt owned and occupied a farm homestead in Clayton county, Iowa, continuously from 1868 to 1900. That on March 29, 1900, he purchased a house and lot in the town of Elkader. That in the latter part of March, or first part of April, 1900, he abandoned the farm homestead, and made the house and lot in Elkader his homestead. That the new homestead was of no greater value than the old one. That the indebtedness of bankrupt to claimant, Wolf, was incurred March 6, 1900, and prior to the acquisition of the last homestead. That on February 4, 1902, bankrupt sold his farm in Clayton county and his home in Elkader. That the homestead sold for $900, and the farm for $3,600; both tracts being sold together. That bankrupt in said deal took a note and chattel mortgage of one E. F. Cords for $1,750, and afterwards discounted said Cords note to White & Miller for $1,400. That the trustee of said bankrupt's estate collected said $1,400, less $38, which comprised a bill said White & Miller had against bankrupt, and $5 they had paid to him on account of the purchase of said $1,750 note and mortgage. That the trustee has said money in his custody at the present time. That bankrupt and his wife, at the time of the sale of said Elkader homestead, intended to invest the proceeds of such sale in a new homestead, and that they still so intend if they can procure the money."

Upon these facts, the referee held that the bankrupt was entitled to the proceeds of the homestead as against the claim of the petitioner, but, as he had discounted the proceeds of the sale to the amount of $350, such discount must be equitably divided and apportioned so as to impose upon the contract price of the homestead its share of the discount, to wit, the sum of $70; the final order being that the trustee should pay over to the bankrupt the sum of $830 as the amount realized from the sale of the homestead.

Exceptions were taken to the ruling of the referee, and the questions at issue were thereupon certified to the court for determination.

The provisions of section 2981 of the Code of Iowa, as construed by the supreme court of the state (Benham v. Chamberlain, 39 Iowa, 358; State v. Geddis, 44 Iowa, 537; Schuttloffel v. Collins, 98 Iowa, 576, 67 N. W. 397, 60 Am. St. Rep. 216), authorize the sale of the homestead and the reinvestment of the proceeds in another homestead, which will be exempt from liability for debts not enforceable against the first homestead. The referee found, as a question of fact, that when the Elkader home was sold it was the intent, and still is, of the bankrupt and his wife, to invest the proceeds realized from the sale of their home in the purchase of new homestead.

In the case of Schuttloffel v. Collins, supra, it was said:

"The question of fact in the case is, was it the intention of the husband and wife to use the proceeds of the sale for the acquisition of a new homestead? If so, the money was exempt from the claims of the creditors of the husband. * * * It is not necessary that the old homestead be sold for cash, which is immediately invested in a new one. The sale may be on time, and if the intention is to invest the proceeds, when realized, in the new homestead, such proceeds will be exempt."

These decisions, as applied to the facts of this case, make it clear that the bankrupt is entitled to the proceeds of the Elkader property in the hands of the trustee as against his general creditors; but it is claimed by the petitioner that the debt due him was created before the Elkader home was acquired, and therefore it and the proceeds

thereof are liable to the payment of his claim, under the provisions of section 2976 of the Code of Iowa, which enacts that "the homestead may be sold on execution for debts contracted prior to its acquisition, but in such case it shall not be sold except to supply any deficiency remaining after exhausting the other property of the debtor liable to execution." As already stated, section 2981 of the Code authorizes a change of homestead, it being further therein declared that "the new homestead, to the extent in value of the old, is exempt from execution in all cases when the old or former one would have been." The supreme court of Iowa in the cases of Pearson v. Minturn, 18 Iowa, 38; Sargent v. Chubbuck, 19 Iowa, 37, and Furman v. Dewell, 35 Iowa, 170, has held that the change of homesteads contemplated by the statute includes cases wherein a person owning at the same time two pieces of property changes his residence from the one to the other. Thus in Furman v. Dewell, supra, the facts were that the defendant had, from 1865 to 1871, owned and occupied as a homestead a lot and a half in the town of Magnolia; that in 1867 he had bought 35 acres of unimproved land, and in April, 1871, having built a house on the 35-acre tract, he moved his family thereto, and claimed the same as his homestead. In 1869 a judgment was rendered in favor of the plaintiff, Furman, and in October, 1871, a sale on execution was had of the 35-acre tract. It was held by the supreme court that the sale was void; it being said that "the statute not only conferred on the defendant the right to change his homestead in the manner he did, but said to him that his new homestead, 'to the extent in value of the old,' should be 'exempt from execution in all cases where the old or former homestead would have been exempt.' Now, if after the change of homestead the new one remained liable absolutely to be sold on execution on the plaintiff's judgment, because it had been a lien thereon, and the former homestead also became subject to execution, as it undoubtedly did by being abandoned as such, then the statute would be a mockery. The owner of the homestead, under such a construction, would be practically deprived of the right to change his homestead, and the statute exempting the new homestead to the extent that the old one was exempt would be entirely defeated; for, upon appellant's theory, a change of homestead would render the former one liable to execution, while the new one would continue to be liable in the same manner as it had been before the change. By making the change, the old homestead would become liable, while the new one would not be exempt. This is contrary to the plain language and obvious purpose of the statute." The facts, as found by the referee, show that the new homestead acquired in the Elkader property did not exceed in value the former homestead, which, by abandonment, was made liable for the debts of the bankrupt, including that of the petitioner, Wolf; and the referee therefore rightly held that, under the construction placed upon the provisions of the Code of Iowa by the state supreme court, the bankrupt had the right to change his homestead from the farm property to the town property in Elkader, and that, as the former homestead was exempt from liability for the debt due the petitioner, the Elkader homestead would be equally exempt.

On behalf of the bankrupt, exception was taken to the ruling of the referee that the discount made to secure payment of the note of E. F. Cords, which was taken as part payment for the realty, should be equitably apportioned so as to deduct from the nominal price of each piece of realty its proportionate share of the discount made, which was the sum of $350; and, on behalf of the creditor, exception is taken to such ruling upon the theory that the whole of this discount should be deducted from the proceeds of the homestead. As I understand the facts found by the referee, it appears that the two tracts of realty were sold together for the sum of $4,500, the homestead at $900 and the farm property at $3,600. In fact the property was sold for the note of E. F. Cords of $1,750, and the remainder in cash or its equivalent. Subsequently, the bankrupt agreed to take $1,400 for the note of $1,750, and this agreement was carried out by the trustee, who received the $1,400 paid in discharge of the Cords note and mortgage. The sale of the two pieces of property did not, therefore, realize the nominal figures placed thereon of $900 and $3,-600. The theory of the bankrupt that, as the homestead brought $900 in the sale, that amount should be awarded him, is not well taken, because the real fact is that the homestead did not realize, out of the funds in the hands of the trustee, the sum of $900. On the other hand, the claim of the creditor, that the amount representing the funds realized from the sale of the homestead property should be reduced by the whole amount of the discount made on the Cords note, is not equitable, and cannot be sustained. Suppose the note taken as part payment for both pieces of property had, through some misfortune overtaking the maker thereof, become valueless or noncollectible; would it be just to hold that the whole amount of such loss must be deducted from the purchase price of the homestead? But it is contended that this discount was the act of the bankrupt, and that it created a loss which ought to be borne by him. The trustee, as the representative of the creditors, did not repudiate the action of the bankrupt in this particular, but accepted payment of the sum due on the note less the discount agreed upon. The referee does not find, upon the evidence, that the action of the bankrupt in agreeing to the discount was fraudulent, or that he could surely have collected the whole amount of the note. The action of the bankrupt in this particular may have been hasty and ill-advised, but as the trustee has accepted, for the creditors, the fruits of his action, I do not see any good ground for holding that the discount made to secure prompt payment of the note should be charged up against the proceeds of the homestead, especially as such action would injuriously affect the rights of the wife, who has an equal interest in the homestead and its proceeds.

The action of the referee in charging the discount proportionately upon the proceeds of the homestead and farm property fairly meets the equities of the situation, and the exceptions thereto are overruled.