ALICE E. MAGEL, Appellee, v. HARRY HUNT, Sheriff, D. W. BATES, Superintendent of Banking, Receiver, C. L. BOSIER, Appellants.

No. 43021.

FEBRUARY 13, 1936.

Mohland, Kuhlemeier, Fischer & Cray and H. F. Kuhlemeier, and Edw. L. O'Connor, Attorney General, for appellants.

La Monte Cowles, for appellee.

DONEGAN, C. J.—In the year 1902, Peter Magel became the owner of lot 220, Smith's addition to the city of Burlington, Iowa, and a short time thereafter he and his wife moved upon said premises and established a homestead in which they lived until his death in 1923. In 1921, Magel purchased 10 shares of stock in the Iowa State Savings Bank of Burlington, Iowa. Some time thereafter, and before the death of Magel, said bank was consolidated with the First National Bank of Burlington, and in exchange for his 10. shares of stock in the Iowa State Savings Bank, Magel received 15 shares of stock in the consolidated bank known as the First Iowa State Trust & Savings Bank. Magel died on April 8, 1923, leaving a will under the terms of which the said homestead and 15 shares of stock in the

First Iowa State Trust & Savings Bank were given his widow, Alice E. Magel, the plaintiff in this action, who was also appointed executrix. In February, 1925, the final report in said estate, showing that all debts and claims against the said estate had been paid in full, was filed and approved. On March 12, 1925, Alice E. Magel sold the homestead for $6,750, and on March 16, 1925, she purchased lot 165, Starr & Foster's subdivision of the city of Burlington, Iowa, and erected thereon a new home with the proceeds derived from the sale of her former homestead. Upon the completion of the new home in 1925, Alice Magel moved into it and has continued to reside therein until the present time. The 15 shares of bank stock which had been bequeathed to Alice E. Magel were turned over to her in the settlement of said estate. At that time the bank appeared to be in a flourishing condition and continued to pay dividends until 1932, when it passed into the hands of D. W. Bates, superintendent of banking of the state of Iowa, as receiver.

In July, 1933, Bates, as receiver of said bank, obtained a judgment for $1,500 against Alice E. Magel in a suit on the assessment of the bank stock held by her. Execution issued on this judgment and, in October, 1934, the sheriff of Des Moines county, Iowa, levied such execution upon lot 165, Starr & Foster's subdivision of the city of Burlington, being the lot purchased and the house erected by Alice E. Magel thereon, with the proceeds derived from the sale of her former homestead. Following the levy of this execution, Alice E. Magel caused notice to be served on the sheriff and the receiver, notifying them that the property levied on was her homestead and not subject to sale on execution for the satisfaction of the judgment obtained against her. The sheriff and the receiver disregarded this notice, and Alice E. Magel brought an action in equity to enjoin the sale. The case was tried to the court, and a decree was entered finding that the property levied upon was the homestead of the plaintiff, Alice E. Magel, and that it was not subject to sale on the execution, and a permanent injunction was issued. From this decree the defendants appeal.

At the time the bank stock was turned over to and became the property of Alice E. Magel, she was occupying and entitled to a homestead exemption in the property which had been owned by her husband and used as a home by both of them at the time of his death. Code section 10151. Her homestead right in that

property, therefore, antedated her liability on the bank stock, and there is no claim that her husband had purchased or became liable on the bank stock before he had established this home and acquired his right of homestead therein. It is contended by the appellants, however, that Alice E. Magel, having no children or other dependents or family living with her in her said home left to her by her husband, was entitled to a homestead exemption in that property while she continued to occupy it, and no longer. Appellee, on the other hand, contends that the lot and house erected thereon and now occupied by her as a home, having been purchased and paid for with the proceeds of the former homestead, are now clothed with the same homestead exemption as was her former home. The statutes, so far as applicable to the question here presented, are sections 10150, 10151, and 10154, Codes 1924 to 1935, and are as follows:

"10150. Exemption—divorced spouse. The homestead of every family, whether owned by the husband or wife, is exempt from judicial sale, where there is no special declaration of statute to the contrary, and such right shall continue in favor of the party to whom it is adjudged by divorce decree during continued personal occupancy by such party."

"10151. 'Family' defined. A widow or widower, though without children, shall be deemed a family within the meaning of this chapter, while continuing to occupy the real estate used as a homestead at the death of the husband or wife."

"10154. New homestead exempt. Where there has been a change in the limits of the homestead, or a new homestead has been acquired with the proceeds of the old, the new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former one would have been."

It is the contention of the appellants that primarily and fundamentally the homestead exemption existed only in favor of and for the benefit of the family; that under the provisions of section 10150 the surviving widow, without children, would not be within the definition of a family; that the exemption of the homestead would not be available to her except for section 10151, which provides that she shall be deemed to be a family within the meaning of the chapter on homesteads; that under this provision she shall be deemed a family only so long as she occupies

the real estate used as a homestead at the death of her husband; and that, since the property now occupied and claimed as a homestead by Alice E. Magel was not used as a homestead by her husband at the time of his death, there can be no homestead exemption in such property in the appellee.

The appellee meets this contention with the claim that under the provisions of section 10154 the new home purchased by her with the proceeds of the old homestead is now clothed with the same exemption as was the old homestead, and with this contention we are disposed to agree. It must be borne in mind that the entire law in regard to homestead exemption is statutory. There is nothing in the history of this law to indicate that, as appellants appear to claim, it is the product of successive enactments under which the homestead exemption was first granted to the family and later extended to the widow or widower, without children, while continuing to occupy the real estate used as a homestead at the death of the husband or wife; that the provision that a new homestead could be acquired with the proceeds of the old and be exempt to the value of the old was a still later development; and that this provision was intended to apply only to cases where there was, in fact, a family, and not to cases where a widow would be deemed a family while continuing to occupy real estate used as a homestead by a husband at the time of his death. The provisions contained in sections 10150, 10151, and 10154 are found in the Code of 1851, in almost the same language, and have been the law in this state at all times since then. It thus appears that the statutes which appellants now construe as denying the right of the appellee to claim an exemption in the new home to the extent of the proceeds of the old, were all enacted at the same time; that the homestead exemption given to the widow under section 10150 is no less a homestead while it continues than is the homestead exemption enjoyed by the family; and that the provision of section 10154, which makes a new home purchased with the proceeds of the old homestead exempt "*in all cases* where the old or former one would have been," was not meant to exclude from its protection a new home of a widow, without children, purchased with the proceeds of her old homestead. Had the intention of the legislature been otherwise, it would not have used the broad expression, "*in all cases* where the old or former one would have been," but would have used some language indicating that an exception was to be

made in cases where a new home was purchased by a widow, without children, with the proceeds derived from the sale of her old homestead.

In 29 C. J. 782, it is said: "The preservation of the homestead is considered of more importance than the payment of debts. The object of the provisions is to provide a home for each citizen of the government, where his family may be sheltered and live beyond the reach of financial misfortune, and to inculcate in individuals those feelings of independence which are essential to the maintenance of free institutions."

And in 29 C. J. 787, we find the statement: "Homestead provisions not being deemed to be in derogation of the common law, the rule is that homestead laws must be liberally construed in favor of the debtor, especially where the homestead exemption is restricted within moderate limits."

See, also, Schuttloffel v. Collins, 98 Iowa 576, 67 N. W. 397, 60 Am. St. Rep. 216; Johnson v. Gaylord, 41 Iowa 362; Elliott v. Till, 219 Iowa 649, 259 N. W. 460; Green v. Root (D. C.), 62 F. 191.

The record in this case shows that within a few days after the old homestead was sold the appellee purchased the lot upon which the new home was built; that the construction of the new home began shortly thereafter; and that it was completed and occupied as a home within a few months after the sale of the old homestead. Under both the letter and spirit of the statutes of this state, in regard to homestead exemptions, we are satisfied that the property which the appellants sought to subject to the payment of the debt here involved constituted a new homestead purchased with the proceeds of the old, and that, under the provisions of section 10154, this new homestead is exempt "to the extent in value of the old."

The decree of the trial court is, therefore, affirmed.—Affirmed.

ANDERSON, KINTZINGER, POWERS, and RICHARDS, JJ., concur.