## Hunt v. Starks et al.

(Decided Nov. 2, 1934.)

W. R. GARDNER and SAM ROBINSON for appellant.
W. D. GILLIAM and N. F. HARPER for appellees.

Opinion of the Court by Morris, Commissioner—Affirming.

The first of several acts out of which arose the pres-

ent controversy occurred on January 10, 1914, when J. B. Starks, as principal, and appellant John W. Hunt and appellee C. J. Hicks as sureties, executed a note to the First National Bank of Scottsville in the sum of $1,250.

The note was not paid at maturity, and on September 28, 1914, the bank sued principal and sureties, obtaining judgment against them for the amount of the note plus interest from the date of its execution. Starks never paid any part of the debt, it falling to the two sureties to satisfy the judgment, each paying one-half thereof, or $700. The judgment which had been obtained on the note was assigned to the appellant and appellee, as appears from a marginal indorsement on the judgment book of the Allen circuit court, as follows:

"The within judgment having been satisfied in full is hereby released. Jan. 28, 1916. Same being satisfied by Hicks and Hunt. Same is hereby transferred to them. H. P. Gardner, Cas."

The marginal transfer is made part of the petition filed later by Hunt, as was also copy of an execution issued on the judgment on Feb. 6, 1928, which execution had been placed in the hands of the sheriff, and returned with a "no property found" indorsement.

On March 19, 1933, appellant filed in the Allen circuit court his petition in equity, naming as defendants the principal on the note, Starks, the Frst National Bank of Scottsville, calling upon it to set up any interest, and also Mrs. Burton Starks, executrix of the will of Tom Burton, deceased, the latter named as defendant for the reason hereinafter set out. The petition sets up, first, facts with relation to the execution of the note to the bank, the failure of the principal to pay, the institution and prosecution to judgment of the suit by the bank, the resultant judgment, the issuance of execution and return, and with relation to the discharge of the judgment debt recites the fact that Hunt paid one-half thereof. It is then alleged that Tom Burton, deceased, by his will had bequeathed to J. B. Starks the sum of $1,000, which was at the time of the institution of the suit by Hunt in the hands of the defendant executrix and about to be paid over to the legatee, Starks. He pleads sufficiently for an order of attachment or garnishment against the executrix and for an order direct-

ing the personal representative to turn over to him the entire bequest, on the ground that while he had only paid $700 of the judgment debt, that amount with interest from the date of payment had grown to an amount in excess of the $1,000. Without going further into details as to the pleading, it may be said that it constituted a valid cause upon which to recover the debt and sustain a garnishment. No bond was executed, perhaps since, in actions of this character, seeking garnishment after a return of "no property found" bond is not required. Civil Code of Practice sec. 439.

On April 19, 1933, appellee Hicks, cosurety with Hunt, filed his intervening petition. Later Hunt filed a special and general demurrer and motion to dismiss Hicks' intervening petition; the special demurrer challenging his capacity to sue, the general demurrer going to the quality of the petition, and the motion to dismiss being based on a failure to verify the petition. The special demurrer and motion to dismiss seem not to have been passed on, no complaint on that account being made, and the general demurrer was later overruled.

In his pleading Hicks alleged, as his grounds to intervene and to entitle him to equal relief with the appellant Hunt, that the judgment declared upon by Hunt was transferred by the bank to Hicks and Hunt "jointly," and that they held, at the time of the transfer, and have held ever since, "equal joint and the same interest in the judgment"; they having paid the judgment debt in equal proportions and at the same time. Hicks also alleged that he and Hunt, jointly in their effort to keep their said judgment alive and pursue the same to collection, caused an execution to issue and to be placed with the sheriff which he identfied as the same which is filed with the petition. He specifically states that at all times since its payment by the two sureties "he and the plaintiff have been the joint owners of the said judgment, * * * jointly and equally entitled to collect same out of any proceeds available," to the principal in the note, J. B. Starks, and that he has the same interest in any money that might be collected from Starks as has the plaintiff, and, after alleging that the sum of money in the hands of the garnishee will not be sufficient to fully satisfy the total amount of the judgment debt paid by the two sureties, he asks that the garnishee be required to pay to them an equal amount of the bequest. No answer was filed to the original or

intervening petition by either the bank or personal representative, nor was any responsive pleading filed by appellant.

The case was first submitted on the petition of Hunt. The court adjudged recovery by Hunt of the sum of $1,000, sustained the garnishment, and the executrix was directed to pay the judgment together with costs. The judgment, however, recites the filing of the intervening petition by Hicks, and ordered the executrix to deposit the money in her hands with the clerk of the court for the purpose of being disbursed under orders of the court, "upon determination of the right" of the interpleader.

Later, and at the same term of court, the cause was again submitted on Hunt's demurrer to the pleading of Hicks. The court overruled the demurrer, to which ruling proper exception was saved, and upon a declination by Hunt to plead further, the cause was submitted on the petition and intervening petition, the court holding that by his showing Hicks was entitled to one-half the proceeds of the bequest to Starks, and directed the clerk to pay to the parties one-half each out of the amount in his hands, less one-half the costs. Exception to this ruling was saved, and an appeal granted.

Appellant contends that the court was. in error in overruling his demurrer, and in adjudging Hicks entitled to any portion of the garnisheed fund. An answer to one objection will suffice as an answer to the other.

It is strenuously insisted that Hicks had no right under the law to have his intervening petition filed, because such pleading is only permitted in a case where it is clearly shown that the interpleader has an interest in or a right to the property in controversy between the plaintiff and interpleader, set up in the petition; and it is urged that when a "principal has defaulted and payment of indebtedness either before or after judgment has been made by co-sureties, equally, or where contribution has been made, all equities between co-sureties cease, and each becomes a creditor of the principal for the amount paid by such surety, so that any security or fund thereafter received by one of them from the principal, does not inure to the benefit of the others." The foregoing from appellant's brief appears to be substantially a quotation from 50 C. J. p. 285. There seem to be

omitted from the language used certain words which appear in the text as follows: "and the co-sureties have adjusted their rights and liabilities to each other," which should be inserted after the words "and payment has been made by co-sureties equally, or where contribution has been made," then equities cease. The use of the words in the proper place lend quite a different meaning, and the principle as quoted in brief cannot be applied here, because there had been no adjustment of the rights of Hunt and Hicks, as between themselves.

Plaintiff insists that the subject-matter of the action is the money attached, and that Hicks fails to show any right therein, because he only asserts in his pleading that he has a "valid subsisting interest in the subject matter of this action and for this reason is entitled to intervene." If this were all, the allegation might be well classed as a mere conclusion, but from a reading of the pleading it assuredly does not rest on the conclusion, but sets out facts detailed above, which show in Hicks an identical interest in the "subject-matter" as the pleading of Hunt showed in himself. If in fact the money attached was the subject-matter, even to the extent of an equitable lien created by the garnishment, it may well be said that if Hicks' contention is correct then the lien inured as much to his benefit as it did to appellant's.

Counsel for appellant quotes Vanmeter v. Fidelity Trust & Safety Vault Co., 107 Ky. 108, 53 S. W. 10, 21 Ky. Law Rep. 744, in support of his contention.

Measured by the rule as laid down it appears that appellees' rights were well within the rule taken from Horn v. Volcano Water Co., 13 Cal. 62, 73 Am. Dec. 569, as quoted in the Vanmeter Case, to the following effect:

> "The interest mentioned in the statute which entitles a person to intervene in a suit between other parties must be in the matter in litigation, and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment."

The appellant loses sight, seemingly, of what appears to the court to be the fact that the controversy here is not one to be placed on the same basis as a suit between the parties, proceeding purely as cosureties, after payment or contribution and after an adjustment

of their rights and liabilities. This suit was predicated by Hunt on his rights, not simply as a cosurety, but also upon his rights gained by the assignment of the judgment. Hicks' rights were identical, according to his pleading. One had as much right as the other to the money (which after all was Stark's money) in the hands of the executrix. The fact that Hunt was, as he claims, more diligent than Hicks, did not change or alter their respective rights. Hunt's right to the fund was not because of the fact that he had moved so as to secure the fund by attachment. That right to the fund was based on the fact he had paid a part of the judgment debt which has been subsequently assigned. Hicks' interest was based on the fact that he had also paid a part of the judgment, followed by an undenied alleged joint ownership of the assigned judgment. While an attachment may not be distinct to such an extent as to be severable from the entire action, it "only serves the purpose of seizing the attached property and bringing it into court for the purpose of subsequent disposition. Until some order is made adjudging the disposition of the property, any person having an interest in it, whether party or not, may present his claim." Marcum v. Edwards, 181 Ky. 683, 205 S. W. 798, 800.

The principles which might be applied here cannot be far different from the principles which underlie the doctrine of contribution. The rights and liabilities of cosureties with regard to contribution are statutory based on equitable principles. Many authorities hold that contribution had its beginning in the relationship of cosureties, not being founded entirely on the contract of suretyship, but based on the maxim that equality between those whose obligations are identical is equity, and on the principle of natural justice.

"* * * it is an equity which springs up at the time the relationship of cosureties is entered into and ripens into a cause of action when one surety pays more than his portion of the debt. But while this right has generally been considered as dependent rather on a principle of equity than on contract, it has been suggested that it may well be considered as resting alike on both for its foundation; since although generally, there is no express agreement entered into between joint sureties, yet from the uniform and almost universal understanding which seems to pervade the whole community, that from the circumstances alone of their agreeing to be,

126

and becoming accordingly cosureties of the principal, they mutually become bound to each other to divide and equalize any loss that may arise therefrom to either or any of them, it may with great propriety be said that there is at least an implied contract to that effect, and this liability between sureties to contribution, in case of loss through this inability of their principal to pay being known to them at the time of their becoming sureties, may well be considered a great, if not the main, inducement, in many instances, to their becoming such." 21 R. C. L. sec. 167, pp. 1130, 1131.

Without announcing the foregoing quoted text as a controlling principle in this case, or in this jurisdiction, because it is not necessary to do so, the reasoning most assuredly lends much strength to the conclusion that Hicks was, and certainly by his pleading clearly showed himself to be, entitled to what the lower court adjudged him to receive, that is, one-half of the fund in the hands of the court, the whole of which was undeniably the property of Starks, the principal on the original note. It does not seem to be necessary for a determination of this case to go to the extreme of applying the law of contribution or finespun principles of equity. It is sufficient to say that from all the facts gathered from the pleadings and the application of the broad principles of justice, it is concluded by the court that Hicks not only had the right to present his cause in the manner it was presented, but that his undenied pleading manifested clearly his right to have an order in his favor adjudging him entitled to one-half the proceeds of the attached fund.

Judgment affirmed.