## Marcum v. Edwards.

(Decided October 22, 1918.)

### Appeal from Clay Circuit Court.

1. Homestead—Reinvestment of Proceeds—Exemption.—The owner of a homestead may voluntarily sell it and the proceeds to the extent of $1,000.00 be exempt from the payment of debts accrued subsequent to the acquisition of the homestead, provided the owner makes the sale with the intention of reinvesting the proceeds in another homestead which he has reasonable time to do, and when invested the new homestead is as much exempt as was the first one.

2. Estoppel—Estoppel by Judgment.—For a fact to be concluded between parties and privies by a former judgment it must not only be one which was or could have been presented upon the first trial, but the issue calling for such presentation must have been disposed of by the former judgment, otherwise there will be no estoppel by judgment.

3. Judgment—Bar—Attachment.—A personal judgment which also sustains the alleged grounds of attachment and which does not in any way dispose of or apply the attached property is no bar to subsequent litigation by defendant in the judgment over the right to the attached property or its proceeds.

FAULKNER & FAULKNER and RAWLINGS & WRIGHT for appellant.

A. T. W. MANNING, D. Y. LYTTLE and MANNING & LYTTLE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Plaintiff (appellee) brought this suit to recover of defendant (appellant) and others $1,000.00 which plaintiff, as accommodation endorser on a note executed by defendant and others, had paid. Insolvency grounds of attachment were made in the petition and an order of attachment was issued and Green A. Combs, a debtor of

defendant, was summoned to answer as garnishee, he having theretofore purchased from defendant a large tract of land upon which the latter with his family resided. At the time of the service of the garnishment, Combs was indebted to defendant in a balance of the purchase money in the sum of $1,350.00. Defendant did not plead to the merits of the suit but suffered judgment by default to be entered against him. That judgment recites, "It is therefore adjudged by the court that the plaintiff, D. C. Edwards, recover from the defendants, Jas. F. Marcum. H. B. Marcum and T. C. Cundiff the sum of one thousand ($1,000.00) dollars, with interest thereon at the rate of six per cent per annum from the 4th day of February, 1913, until paid; and for all of which the plaintiff may have execution. And it further appearing that the plaintiff herein sued out and had granted on Feb. 17th, 1913, an order of general attachment against the property of the defendants, James F. Marcum, H. B. Marcum and T. C. Cundiff, and that said order of general attachment and the general attachment has been duly executed and the said grounds of attachment not having been controverted, it is now ordered by the court that the said general attachment and the grounds therefor are hereby sustained." This is followed with the statement that the garnishee not having answered, that branch of the case is continued for further proceedings.

Before any other orders were made in the case, and without any adjudication applying the attached fund to plaintiff's debt or in any manner disposing of it, defendant filed his answer pleading that he was a *bona fide* housekeeper with a family resident in this Commonwealth, and that he occupied the land sold to Combs as a homestead for himself and family; that the purchase money over and above the attached fund had been applied as directed by him to the payment of defendant's indebtedness, a large portion of which consisted of mortgages upon the conveyed tract of land; that he had intended from the beginning to invest what might be left, if any, of the proceeds of sale, in a homestead but he had not done so because it had not been paid to him and he asked to be adjudged $1,000.00 of the attached fund as exempt to him under the Homestead Statute. The right of defendant to the exemption asserted by him was resisted upon the two grounds, (1) that defendant was

not a citizen of the state of Kentucky, and (2) that he had already been paid out of the proceeds of the sale of his tract of land by Combs, the garnishee, more than $1,000.00, which he had appropriated to his use. These grounds were denied and upon final submission of the cause the court held defendant not to be entitled to the relief he claimed and adjudged the fund to be in lien for plaintiff's debt and that a sufficiency of it be appropriated for that purpose. To reverse that judgment the defendant prosecutes this appeal.

Waiving all other questions which might possibly be involved in the two contentions made by plaintiff as just stated, it is sufficient to say that the testimony heard upon the trial failed utterly to sustain either of them. On the contrary, it showed that defendant had never received any part of the purchase money for the farm sold to Combs, since all of it, except the attached fund, had been appropriated to the payment of defendant's debts, and that he was and had all the while been a resident with a family in this Commonwealth. True, he had visited his daughter in the west and with his family was away from Kentucky on that visit about six months, but he left the great bulk of his household furniture upon his old homestead, which he had sold to Combs and it was stored in the residence which he had, prior to the sale, occupied with his family.

Indeed the two contentions of plaintiff above alluded to were abandoned upon the trial and are not urged upon this appeal. This leaves for our consideration only the ground upon which the trial court based its judgment, which is, that the default judgment above referred to, wherein plaintiff recovered his personal judgment for the debt against the defendant, and in which the grounds of attachment were sustained, fixed the right of the parties to the attached fund and defendant was estopped under the doctrine of *res adjudicata* to assert his homestead right at the time he did. In other words, that he should have answered the petition, incorporating the attempted assertion of such right before the default judgment was rendered, and not having done so his right to do so was barred.

Preliminary to considering that question it should first be determined whether one entitled to the homestead exemption provided by our statute may *voluntarily* sell his homestead and the proceeds be exempt from the

reach of his creditors upon the ground that the fund was derived from and represents exempt property. An examination of adjudged cases as well as text writers upon the subject will show that the authorities are not in entire accord upon the question. 13 R. C. L. 584; Fred v. Bramen, 97 Minn. 484, 114 A. S. R., 740; Mann v. Kelsey, 10 A. S. R. 800; Morgan v. Roundtree, 45 A. S. R. 234, and notes to Clancey v. Alme, 67 A. S. R. 802. It will be seen that in some jurisdictions it is held that where the homestead exemption is *voluntarily* sold the proceeds, until invested in another homestead, may be subjected to the payment of the debts of the one claiming the exemption and this, notwithstanding he may have intended to reinvest the proceeds in another homestead when he made the sale. (Authorities *supra*). In some states, by statute, it is permissible for the owner of the homestead to sell it with the intention of investing the proceeds in another, which, if done within a reasonable time, the latter, as well as the proceeds before investment, will be exempt from appropriation to the payment of defendant's debts. The rule is quite universal, however, that where the sale of the homestead is *involuntary,* as for instance, the foreclosure of a mortgage, the householder may claim his exemption in the proceeds of such sale, which may remain after extinguishing the lien; but whatever may be the rule elsewhere, this court is committed to the doctrine that the owner of a homestead may *voluntarily* sell it with the intention of investing the proceeds in another homestead, and if this is done within a reasonable time after the sale, or after the owner has been paid the proceeds, neither the newly acquired homestead nor the proceeds of the old one can be subjected by creditors whose debts were created after the acquisition of the first homestead. Cooper v. Arnett, 95 Ky. 603; Lear v. Totten, 14 Bush 101; Torbitt, etc., v. Jackson, 26 Ky. L. R. 196.

In the Lear case it is said: "If the owner sells his homestead and converts it into money *with no purpose of re-investing the proceeds in property not exempt from execution,* the protection the law affords him against the claims of creditors is gone." In the Cooper case, this statement is made: "It is said that the answer does not disclose that he (defendant) sold the first farm with the intention of re-investing in a homestead," but the court disposed of that objection by saying: "We think this con-

tention demands too strict a construction of the Homestead Act," and subsequently in the opinion the court finds that while there may have been no expressed intention, such was the manifest purpose of the debtor as evidenced by his acts. In the Torbitt case the right of the debtor to the exemption under facts quite analogous to those we have here is upheld. To the same effect is the case of Schuttleffel v. Collins, 98 Iowa 576, 60 A. S. R. 216; Macke v. Byrd, 131 Mo. 682, 52 A. S. R. 649, and notes. It is not necessary that we go into an exhaustive analysis of the reasons which led the courts to diverse conclusions upon the subject. It is sufficient to say that this court and those agreeing with it base their holdings upon the fact that the Homestead Statute is for the benefit of the family, and as a favorite in the law, should receive a liberal interpretation so as to guarantee to the family the protection and benefits intended by its enactment, and that, as a consequence, the debtor, if he conceive it to be necessary to improve his condition and that of his family, to dispose of his homestead with the purpose of investing the proceeds in another differently located or circumstanced, he should have the right to do so provided he carries out his purpose and intention within a reasonable time. This construction works no hardship upon, nor is it in anywise inequitable to the creditor since he was entitled to nothing before the sale of the homestead. On the contrary, to hold otherwise would prevent the debtor from exercising the right to improve his condition by acquiring another homestead with the proceeds of his first one.

Upon the *res adjudicata* estoppel forming the basis of the judgment below, but little need be said. In support of it we are referred to the case of Wren v. Cooksey, 155 Ky. 620, and cases therein referred to, which hold in substance that a judgment upon a properly presented issue is conclusive as between parties and privies of all questions which were, or could have been presented upon that hearing. The rule contended for is both ancient and undisputed. In order, however, for it to find application the first judgment must have involved and necessarily determined the same issue involved and sought to be determined in the subsequent proceedings in which the plea is relied on. In the Wren case the facts were that a homestead was attached followed by a judgment which not only sustained the attach-

ment but went further and adjudged plaintiff to have a lien upon the attached homestead to the extent of his debt and ordered it sold for that purpose and the proceeds to be paid to him in satisfaction of his debt. An appeal was prosecuted to this court and the judgment was affirmed, when, after the return of the case, the debtor offered an amended answer claiming the homestead exemption, which answer the court disallowed and declined to permit it to be filed. Afterwards defendant brought an independent action to recover her alleged homestead exemption which the court below refused upon the ground that the question was concluded by the former proceedings and the opinion, *supra,* was rendered in reviewing the last judgment. Clearly, under all principles governing the doctrine of *res adjudicata,* the opinion was proper. Not only had the first judgment between the parties to that suit determined the disposition of the proceeds in contest, but after the return of the case the same question was attempted to be raised by the offered amendment and was again adjudged against the debtor when the court refused the amendment. In the instant case the default judgment went no further than to give a personal judgment against defendant and to sustain the grounds of the attachment. No adjudication was attempted to be made of the right of the parties to the attached fund. On the contrary this was expressly left open for future determination. At any time before such determination defendant had the right to make such contest concerning the disposition of the attached fund as the law and facts would justify. The only issues determined by the default judgment were that defendant owed plaintiff the debt and that the insolvency grounds of attachment alleged were true. An attachment only serves the purpose of seizing the attached property and bringing it into court for the purpose of subsequent disposition. Until some order is made adjudging the disposition of the property, any person having an interest in it, whether party or not, may present his claim. This was all that defendant did in this case. Between the facts of the cases relied on and this one there is a great gulf clearly distinguishing them.

Defendant also claimed additional exemption of $40.00 for each member of his family in lieu of provisions, etc., not on hand, but the statute making such al-

lowances was repealed by our present law upon the subject at the time the plea was made and since exemption statutes pertain to the remedy he would not be entitled to the latter claim.

It is therefore our conclusion that defendant should have been adjudged the sum of $1,000.00 of the attached fund as exempt to him under the Homestead Statute, and the judgment is reversed with directions to set it aside, and to enter one conforming to this opinion.