37 B.R. 365 (1984)
In the Matter of Gerald Patrick McGUIRE, Debtor.
Gerald Patrick McGUIRE, Plaintiff,
v.
MANUFACTURERS AND TRADERS TRUST CO., Defendant.
Bankruptcy No. 81-594, Adv. No. 83-700.
United States Bankruptcy Court, M.D. Florida, Tampa Division.
January 20, 1984.
Jan K. Moncol, Clearwater, Fla., for plaintiff.
Lawrence M. Hankin, Sarasota, Fla., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION
ALEXANDER L. PASKAY, Chief Judge.
THIS IS a Chapter 11 case and the immediate matter under consideration is a Complaint filed by the Debtor, Gerald P. McGuire, who seeks pursuant to § 522(f)(1) to invalidate two judicial liens held by Manufacturers and Traders Trust Co. (Manufacturers). The liens total a sum of $12,749.62 plus interest accrued from the date of the entry of the judgments.
It is the contention of the Debtor that the judgment liens held by Manufacturers impair the exemption rights available to the Debtor pursuant to Art. X, § 4, Fla. Const. which provision immunizes the residence of a debtor from the claim of creditors provided that the property qualifies for homestead treatment. Ordinarily, the Debtor's claim for relief would not present any particular difficulty but because of the peculiar circumstances in this case, the matters do not lend themselves to easy resolution.
The relevant facts as developed at the final evidentiary hearing either through testimony or by stipulation of the parties, are as follows:
The Debtor purchased his residence, located in Island Estates, Clearwater, Florida in 1971 and resided there with his wife and minor children until May 10, 1983, when the property was sold. The total purchase price was $170,000 out of which the Debtor netted $61,216.59. It further appears from the testimony of the closing agent that out of the proceeds of the sale, $11,944.29 was paid to Frank McGuire, the Debtor's brother, who apparently loaned that amount to the Debtor in order to enable the Debtor to make necessary repairs on the residence and thereby place the property in a saleable condition. It also appears that from the net proceeds, $42,471.12 was paid to the Debtor and $18,745.47 is still held on escrow pending the resolution of this controversy by the attorney who acted as the escrow agent. Should Manufacturers prevail in *366 this matter, the sums held in escrow will be paid to satisfy the judgment liens in the principal amount of $12,749.62 plus accrued interest from the date of the entry of the judgments.
The record is devoid of any evidence as to the disposition of the funds received by the Debtor with the exception of $1,000 which the Debtor placed on deposit for the purchase of a lot located in a residential community known as East Lake Woodlands, after the sale of the principal residence.
The Debtor died on September 23, 1983 and the widow of the Debtor, though not formally substituted as party plaintiff, is the real party in interest. Although it was intimated at trial that a probate proceeding is pending, there is no competent evidence in this record to establish either the existence of a probate proceeding or the extent of a probate estate, if any.
The Debtor's widow and two minor children are currently residing with another son and she stated that she intends to purchase a home if she prevails in this litigation. There is no clear evidence in this record that at the time of the sale, the Debtor intended to reinvest the proceeds in another residence or that the proceeds from the sale were segregated for the purpose of reinvesting. Further, there is no evidence of the amount that the Debtor intended to reinvest in a principal residence even if an intent to reinvest can be inferred from the circumstances.
It is without dispute that Gerald McGuire was the head of the household at the time of his death and by virtue of § 222.19 Fla. Stat. (1981), that status, which qualifies the owner's property for homestead exemption, inures to the benefit of his surviving spouse who also enjoys the right to assert this complaint.
There is no doubt that if the Debtor had owned the residential property at the time of his death, the property would be untouchable by creditors. However, in this case, the Debtor conveyed the real property approximately four months prior to his death and the proceeds of the sale were not reinvested in a new dwelling. This leaves for determination the question of whether the proceeds from the voluntary sale of the homestead property retain the character of exempt property thereby removing them from the reach of creditors.
The Supreme Court of Florida addressed this precise question in the case of Orange Brevard Plumbing & Heating Co. v. La Croix, 137 So.2d 201 (1962). After a lengthy examination of the law of other jurisdictions and in recognition of the policy behind the homestead provision of the Florida Constitution, the Court held that the proceeds of a voluntary sale of a homestead are exempt from claims of creditors as is the homestead itself ". . . if, and only if, the vendor shows by a preponderance of the evidence an abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds thereof within a reasonable time." (emphasis supplied) Orange Brevard Plumbing and Heating Co. v. La Croix, supra. The Court also held that only that portion of the proceeds which are intended to be reinvested are exempt and those proceeds which are earmarked for reinvestment must be segregated from other funds of the seller. Orange Brevard, supra at 206.
There is no doubt, and the case law so provides, that the exemption laws are to be liberally construed in order to achieve the underlying policy aims of exemption laws. Drucker v. Rosenstein, 19 Fla. 191 (1882); Pasco v. Harley, 73 Fla. 819, 75 So. 30 (1917); White v. Posick, 150 So.2d 263 (Fla. 2d DCA 1953); Graham v. Azar, 204 So.2d 193 (Fla.1967). However, the Orange Brevard court was careful to point out that where there existed an established homestead up until the time of sale, ". . . the funds realized from such sale enjoy an exempt status provided the other requirements for such exemption as herein set forth are fully met." Orange Brevard, supra at 207.
In the case at bar, the Debtor sold the homestead property on May 10, 1983. There is no evidence in the record that at the time of the sale, the Debtor had taken *367 any steps to arrange for the purchase of a replacement residence or that he had any intent to do so. Further, although it appears that sometime between May 10, 1983 and September 23, 1983, the Debtor entered into a contract and deposited $1,000 for the purchase of a lot in East Lake Woodlands, the record is devoid of any evidence which would support a finding that at the time of the sale the Debtor intended to construct a residence on the lot or that the purchase of the lot was in any way connected to the sale of the former homestead and the construction of a new residence.
As noted above, in order to retain the character of exempt property, proceeds from a voluntary sale of a homestead cannot be commingled with other funds. While the evidence reveals that at the time of the Debtor's death the net proceeds minus the $1,000 deposit were held in a savings account, there is no evidence that the funds in the pass book account were generated solely from the sale of the property. In addition, the location of the proceeds at this time, if they in fact still exist, is unknown. Finally, no testimony was elicited regarding the portion of the proceeds, if any, which was to be devoted to the acquisition of a replacement residence.
Based on the foregoing, this Court is constrained to conclude that the proceeds from the voluntary sale of the Debtor's homestead are not entitled to the protections provided by Art. X, § 4 Fla. Const.
A separate final judgment will be entered in accordance with the foregoing.