[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 17 2000
THOMAS K. KAHN
CLERK

_____

No. 99-10411

_____

D. C. Docket No. 97-06203-CV-WDF

IN RE:     ALAN L. GOLDENBERG,                          Debtor.

SHIRLEY SAWCZAK,

Plaintiff-Appellee,
Cross-Appellant,

versus

ALAN L. GOLDENBERG,

Defendant-Appellant,
Cross-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(July 17, 2000)**

Before ANDERSON, Chief Judge, CARNES and RONEY, Circuit Judges.

ANDERSON, Chief Judge:

In April of 1992, Dr. Alan Goldenberg performed gall bladder surgery on Shirley Sawczak. Sawczak subsequently filed suit against Goldenberg in Broward County, Florida, alleging that during the course of the surgery, Goldenberg completely transected her common bile duct, causing her life-long injuries. Goldenberg was not carrying malpractice insurance. Goldenberg filed a petition under Chapter 7 of the Bankruptcy Code on May 1, 1996, the same day the jury was to start deliberations in the medical malpractice suit. Later that day, Sawczak filed an emergency motion for relief from the bankruptcy automatic stay so that the malpractice trial could be completed. The bankruptcy court granted her motion, and the jury returned a verdict in favor of Sawczak and against Goldenberg in the amount of $4,000,629.

On May 31, 1996, Goldenberg filed bankruptcy schedules listing assets totaling $3,791,119, of which he claimed $3,751,678 as exempt. The assets Goldenberg claimed as exempt included seven annuity contracts, with an aggregate value, according to Goldenberg's bankruptcy schedules, of $355,894. The annuities are single premium deferred annuities; to obtain them, Goldenberg paid a single premium which accumulates interest until the maturity date. All of the annuities provide for a commencement or maturity date at which time certain sums become payable to the annuitant or his survivors under various settlement options. In addition, they all contain a provision for "surrender" of the contract in exchange for a specified lump

2

sum payment, defined as either the "surrender value" or "net surrender value." The surrender provisions can apparently be invoked up until the corresponding maturity dates. According to Sawczak, no maturity date for any of the seven contracts has yet arrived.[1] Goldenberg is both the owner and annuitant of each annuity policy. Goldenberg also claimed as exempt $2,546,319 in individual retirement accounts ("IRAs").

Sawczak filed objections to Goldenberg's claimed exemptions, including objections to his claims of exemption of the annuity contracts and of the IRAs.

I.       The Annuity Contracts

Sawczak objected to Goldenberg's claim of exempt status with respect to the annuities, "to the extent of the surrender value of each." She argued to the bankruptcy court that the cash surrender values of the annuity contracts were not exempt under

---

[1]Sawczak claims that the earliest maturity date for these annuities falls in the year 2009.

Fla. Stat. Ann. § 222.14 (West 1998).[2]  Applying Florida law,[3] the United States

Bankruptcy Court for the Southern District of Florida concluded that:

> Neither the title of [§ 222.14] nor its text distinguishes the proceeds received from a surrender of the annuity contract from the proceeds received after the contract is annuitized. . . . [T]he Court does not accept Sawczak's suggestion that the legislature intended to treat the surrender value of an annuity contract differently than that of a life insurance policy.

Accordingly, the bankruptcy court overruled Sawczak's objection and upheld

Goldenberg's exemption.

Sawczak appealed the bankruptcy court's order to the United States District

Court for the Southern District of Florida.  The district court concluded that:

> Dr. Goldenberg did not have annuity contracts until the funds in the annuity account reached maturity.  He had, instead, option contracts to buy annuities at a future date which options could be revoked by him at anytime prior to the maturity dates. . . .  When the judgment was entered

---

[2]Section 222.14 reads:

**Exemption of cash surrender value of life insurance policies and annuity contracts from legal process**
    The cash surrender values of life insurance policies issued upon the lives of citizens or residents of the state and the proceeds of annuity contracts issued to citizens or residents of the state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured or of any creditor of the person who is the beneficiary of such annuity contract, unless the insurance policy or annuity contract was effected for the benefit of such creditor.

[3]Under section 522(b) of the Bankruptcy Code, 11 U.S.C. § 522(b), a state can choose to "opt out" of the exemptions provided by federal law and provide its own allowable exemptions.  Florida has chosen this option.  See Fla.Stat.Ann. § 222.20 (West 1998).

the funds on deposit were not protected "proceeds of annuity contracts" as described by statute.

Thus, the district court concluded that there was no exemption as to the $355,894 held in the "annuity contracts" and that that money was reachable by process to partially satisfy Sawczak's judgment.

Dr. Goldenberg appeals to this Court arguing that the contracts at issue are in fact annuity contracts exempt under § 222.14 and that the cash surrender values of the annuities are included in the § 222.14 exemption. Sawczak, in turn, makes two alternative arguments to this Court: 1) that Goldenberg did not have "annuity contracts" when he filed for bankruptcy, but only options to buy annuities at future dates which are not exempt under § 222.14, and 2) that § 222.14 exempts only the *proceeds* of annuity contracts, which does not include cash surrender value. The parties have not cited nor have we uncovered any controlling Florida case directly addressing this important issue of Florida law. Consequently, we seek the assistance of the Supreme Court of Florida in resolving this issue.

Having concluded that this case involves an unanswered question of state law that is determinative of this appeal and having found no clear, controlling precedent in the decisions of the Supreme Court of Florida, we certify the following question of law to the Supreme Court of Florida for instructions:

5

ARE THE CASH SURRENDER VALUES OF DR. GOLDENBERG'S "ANNUITY CONTRACTS" EXEMPT FROM LEGAL PROCESS UNDER FLA. STAT. ANN. § 222.14 (WEST 1998)?

In certifying this question, we do not intend the particular phrasing of it to limit the court in its consideration of the problem posed by the case. In order to assist the court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the court.[4]

II. The IRAs

Both the bankruptcy court and the district court upheld Goldenberg's claimed exemption of $2,546,319 in IRAs, and Sawczak cross-appealed that issue to this Court. Sawczak concedes that the IRAs were not acquired by Goldenberg with the proceeds of a fraud perpetrated upon her, that the IRAs do not represent the transfer of non-exempt assets into exempt assets on the eve of bankruptcy, and that "on their face" the IRAs fit the description of assets exempted by Fla. Stat. Ann. § 222.21 (West 1998). Nevertheless, she argues that we should deny Goldenberg's exemption as to the IRAs as an "imposition upon creditors," under a line of Florida cases stating that

---

[4]Pending the response of the Florida Supreme Court, we do not address the parties' arguments concerning whether or not Sawczak can reach the post-bankruptcy petition increase in value of the annuity contracts, if in fact the contracts are not exempt from process under Florida law.

6

the Florida homestead exemption "'should not be so applied as to make it an instrument of fraud or imposition upon creditors.'" Orange Brevard Plumbing & Heating Co. v. La Croix, 137 So.2d 201, 204 (Fla. 1962) (quoting Milton v. Milton, 58 So. 718, 719 (Fla. 1912)); see also Palm Beach Savings & Loan Ass'n v. Fishbein, 619 So.2d 267, 269 (Fla. 1993). We reject this argument as meritless. Accordingly, we affirm the decision of the district court as to this issue.

**AFFIRMED IN PART AND QUESTION CERTIFIED.**