# Third District Court of Appeal

## State of Florida

Opinion filed April 1, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-911
Lower Tribunal No. 11-348-M
_____

**Ruth P. Law,**
Appellant,

vs.

**Benjamin F. Law, and Intervenor, Rahdert, Steele, Reynolds & Driscoll, P.L.,**
Appellees.

An Appeal from the Circuit Court for Monroe County, Mark H. Jones, Judge.

Lawrence H. Liebling, (Safety Harbour), for appellant.

Rahdert, Steele, Reynolds & Driscoll, P.L., and Pamela D. Cichon (St. Petersburg) for appellees, Intervenor, Rahdert, Steele, Reynolds & Driscoll, P.L.

Before WELLS, LAGOA and LOGUE, JJ.

WELLS, Judge.

Ruth P. Law, the petitioner below in this marital dissolution action, appeals from an order denying her motion for a section 57.105 fee award against Radhert, Steele, Reynolds & Driscoll, P.L. (the "Radhert Firm"), the intervener in the dissolution action below. Because we find that the firm had no basis in fact or law for seeking to secure payment of fees owed to it by the former husband from the former wife, we reverse and remand for a determination of the amount to be awarded.

In October 2010, after nearly twenty seven years of marriage, Ruth and Benjamin Law separated and Ruth moved out of the marital home. The home, purchased during the marriage, was titled in Benjamin's name alone but encumbered by a mortgage executed by both parties. There is no dispute that this home was homestead property subject to the protections accorded by Article X, section 4 of the Florida Constitution.

After Benjamin (who was the only signatory to the promissory note secured by the jointly executed mortgage) defaulted, a foreclosure action was filed. Ruth failed to respond to the complaint and was defaulted. However, Benjamin retained the Radhert Firm to represent him in that action and agreed to pay a $1500 retainer and an additional $250 a month to cover legal expenses for representation. He also agreed that in the event the home was sold that the Radhert Firm would act as closing agent, and if the retainer and monthly payments were insufficient to satisfy

2

the Radhert Firm's fees for representing him in the foreclosure action, the Radhert Firm could seek payment from the proceeds of the sale of the marital home.

On November 3, 2011, while the foreclosure action was pending, Ruth sued to dissolve the marriage and asked the court to partition and sell the marital home. In late 2012, on the eve of the sale of the marital home, Ruth, alleging that the proceeds of the sale were protected under Article X, section 4, sought a court order escrowing the proceeds until they could be equitably distributed. The net proceeds from the sale ($33,511.54) were escrowed.

The following month, December 2012, the Radhert Firm moved to intervene in the dissolution action for the purpose of securing from the escrow fund, the outstanding fee ($9,473.27) owed by Benjamin for his representation in the foreclosure proceeding. While Ruth agreed to allow the firm to intervene in the action, she re-asserted her position that the Radhert Firm had no claim against the escrow funds because they were "the proceeds of the sale of the parties' homestead property," and because the firm had no enforceable claim against her or her funds. On the same day Ruth filed her response to the Radhert Firm's motion to intervene, she filed a separate motion seeking an award of the entire escrow fund which she claimed she needed for support.

On February 21, following an evidentiary hearing, a special magistrate determined that the entire escrow fund ($33,511.54) should be awarded to Ruth.

3

The trial court approved this determination but ordered that $9,473.27 of that sum be retained in the escrow account pending further order of the court.

The following month, March of 2013, Ruth noticed and filed a motion for section 57.105 sanctions against the Radhert Firm claiming (1) that the Radhert Firm knew when it entered into its agreement with Benjamin that Ruth "held a protected homestead interest in the property [from which it claimed its fees were to be paid] under Article X, section 4 of the Florida Constitution, and that her interest was therefore exempt from any claim for fees owed by" Benjamin; and, (2) that after the court determined that all of the proceeds from the sale of the home should be awarded to her, no legal basis existed to support payment to the Radhert Firm from the escrowed funds.

Thereafter, the Radhert Firm resisted Ruth's attempts to discover the nature and extent of its representation of Benjamin in the foreclosure action for which it was seeking a fee award from her claiming, in part, that she was not entitled to the information sought because it was either privileged or attorney/client work product. After months of wrangling over discovery of the Radhert Firm's records, and at least one motion to compel discovery and an evidentiary hearing, the trial court agreed that the Radhert Firm "failed to establish a basis for its claim against [Ruth] for the $9,473.27 in home sale proceeds held in trust." The funds remaining in the escrow account were released to Ruth.

4

On July 16, 2013, Ruth, pursuant to her earlier filed section 57.105 motion, sought to recover $16,781.25 in attorneys' fees and $2,010.95 in costs that she had incurred in defending the Radhert Firm's claim. The request was denied on a finding that the Radhert Firm had a "good faith legal and factual basis to bring its claim." We cannot agree.

Section 57.105 of the Florida Statutes in pertinent part provides for an award of attorneys' fees to a prevailing party where it can be demonstrated that the opposing party or that party's attorney asserted a claim which the opposing party or that party's attorney knew or should have known was unsupported by either the facts or the law as applied to the facts:

> (1) Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee, including prejudgment interest, to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:

> (a) Was not supported by the material facts necessary to establish the claim or defense; or

> (b) Would not be supported by the application of then-existing law to those material facts.

> . . . .

> (3) Not withstanding subjections (1) and (2), monetary sanctions may not be awarded:

5

(a) Under paragraph 1(b) if the court determines that the claim or defense was initially presented to the court as a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, as it applied to the material facts, with a reasonable expectation of success.

§ 57.105, Fla. Stat. (2014).

The record in this case clearly shows that no legal basis existed to support the Radhert Firm's claim against either the Laws' marital home or the proceeds therefrom.

First, it was undisputed below that the Laws' marital home was homestead property subject to the protections accorded by Article X, section 4 of the Florida Constitution.[1]   And, because this home was homestead property, Benjamin could

_____

[1] Section 4 of Article X, in pertinent part, provides:

§ 4. **Homestead: exemptions:**

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:

(1) a homestead if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon . . . or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner's family . . . .

Art. X, § 4 (a)(1), Fla. Const.

not waive the protections accorded to it by Article X, section 4 in a retainer agreement with his attorney. See Chames v. DeMayo, 972 So. 2d 850 (Fla. 2007) (approving DeMayo v. Chames, 934 So. 2d 548, 550-51 (Fla. 3d DCA 2006), in which this court confirmed that the protections accorded to homestead property by Article X, section 4 are not subject to waiver in an attorneys' fee retainer agreement).

Second, it is equally beyond dispute that Ruth, although not a title holder, also had a protected interest in the marital home under Article X, section 4 of the Florida Constitution and that she did not waive that interest or those protections as: a) she did not sign any agreement with the firm; and b) even if she had signed the agreement, as with Benjamin, a signature on the retainer agreement would not have waived her homestead protection. See Chames, 972 So. 2d at 862; see, e.g., Bessemer Props., Inc. v. Gamble, 27 So. 2d 832, 833 (Fla.1946) ("This court has also held that a one-half interest, the right of possession, or any beneficial interest in land gives the claimant a right to exempt it as his homestead."); Ezem v. Fed. Nat'l Mortg., 153 So. 3d 341, 344 (Fla. 1st DCA 2014) ("The fact that Appellant does not hold record title to the property is immaterial, because '[r]ecord title is not a prerequisite to a finding that the property is homestead. Homestead status may derive from the husband's beneficial interest as head of the family in a marital home titled in his wife's name.' Heiman v. Capital Bank, 438 So. 2d 932, 933

7

(Fla. 3d DCA 1983).”); Taylor v. Maness, 941 So. 2d 559, 563 (Fla. 3d DCA 2006) (“[T]he individual claiming the homestead exemption need not hold fee simple title to the property.  Callava v. Feinberg, 864 So. 2d 429, 431 (Fla. 3d DCA 2003). Article X, section 4 ‘does not designate how title to the property is to be held and it does not limit the estate that must be owned, i.e., fee simple, life estate, or some lesser interest.’  [S. Walls, Inc. v. Stilwell Corp., 810 So. 2d 566, 569 (Fla. 5th DCA 2002)]. Thus, even if Mrs. Maness owns only a beneficial interest in the Marathon Property, she is entitled to claim a homestead exemption to the forced sale of the property. See Callava, 864 So. 2d at 431 (holding that even if divorced wife only owned a beneficial interest and not title interest in the residence constituting her homestead, she was nonetheless entitled to claim a homestead exemption from the forced sale of the property).”).[2]

Third, the firm failed to demonstrate any basis on which it could secure payment from the proceeds from the sale of the parties’ home.  On the eve of the sale, Ruth petitioned the court below to segregate the proceeds until the court could determine whether the proceeds were either exempt from use to satisfy the Radhert Firm’s fee demand or not otherwise subject to use for that purpose.  See Rossano v. Britesmile, Inc., 919 So. 2d 551, 552 (Fla. 3d DCA 2005) (“[T]he proceeds of a

---

[2] Article X, section 4 was amended in 1984 to change the term “head of family” to “a natural person,” thereby expanding the class of persons who may take advantage of this provision.  Coy v. Mango Bay Prop. & Invs., Inc., 963 So. 2d 873, n.1 (Fla. 4th DCA 2007); see Art. X, § 4, Fla. Const. (1983).

voluntary sale of a homestead to be exempt from the claims of creditors just as the homestead itself is exempt if, and only if, the vendor shows, by a preponderance of the evidence an abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds thereof in another homestead within a reasonable time.") (quoting Orange Brevard Plumbing & Heating Co. v. La Croix, 137 So. 2d 201, 206 (Fla. 1962)). The funds were segregated in an escrow account.

The Radhert Firm, in seeking to satisfy its fee demand from the escrowed proceeds, did not dispute the acknowledged fact that proceeds from the sale of homestead realty may enjoy the same exempt status as that accorded by Article X, section 4 to the homestead realty itself. See Orange Brevard Plumbing & Heating Co., 137 So. at 206 ("After a full consideration of the applicable authorities representing both views on the issue before us, and in recognition of the liberal interpretation of the homestead exemption to which this court is committed, we hold the proceeds of a voluntary sale of a homestead to be exempt from the claims of creditors just as the homestead itself is exempt if, and only if, the vendor shows, by a preponderance of the evidence an abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds thereof in another homestead within a reasonable time."). Nor did it dispute Ruth's right to assert these protections as to the proceeds because she had not been the "owner" or title

9

holder of the homestead realty itself.[3]  Rather, the firm claimed only that Ruth had

"never expressed any intent to [reinvest the funds in another homestead]" so as to

_____

[3] While not argued below, it might be contended that the protections accorded by Article X, section 4(a)(1) to a homestead property, which is described in that provision as *land*, do not apply to the same extent to the *proceeds* from the sale of such land.

     While we need not decide this issue, we see no reason why a spouse such as Ruth can assert the protections afforded by Article X, section 4 to homestead land but not to the proceeds from the sale of that land.  Article X, section 4(a)(1) exempts from forced sale "property," as pertinent here defined as certain "land," which is "owned by a natural person."  Art. X, § 4(a)(1), Fla. Const.  In <u>Bessemer Properties, Inc.</u>, the Florida Supreme Court confirmed that those having "a one-half interest, the right of possession, or any beneficial interest" in land may also assert the exemptions accorded by Article X, section 4 to owners of homestead property or land.  See <u>Bessemer Properties, Inc.</u>, 27 So. 2d at 833.

     In <u>Orange Brevard Plumbing & Heating Co.</u>, the Florida Supreme Court extended the protections accorded by Article X, section 4, to the proceeds of the sale of homestead land if the "vendor" of such land met certain conditions.  137 So. 2d at 206.  However, and as Article X, section 4(c) expressly provides, homestead land cannot be sold or "vended" by a married "owner" unless the sale is joined in by the spouse.  Art. X, § 4(c), Fla. Const. ("The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift . . . .");  <u>see also</u> <u>Taylor</u>, 941 So. 2d at 563 ("[T]he Florida Constitution places certain restrictions on the homestead owner's right to alienate his or her family's homestead property. . . .  [A]rticle X, section 4(c) . . . specifies that the owner of homestead real estate must, if married, be joined by his or her spouse in order to alienate the homestead by sale. As the Florida Supreme Court specified, this provision makes it 'clear that both [spouses] must join in a conveyance of a homestead owned by one spouse to a third party.'" (quoting <u>Jameson v. Jameson</u>, 387 So. 2d 351, 353 (Fla.1980)));  Richard O. Jacobs, Esquire, Tye J. Klooster, Esquire, <u>Asset Protection Tools For Florida Professionals:  Strategies To Pursue And Strategies To Avoid</u>, 4 Fla. St. U. Bus. Rev. 1, 27-28 (2004-2005) ("[A] homestead owned individually by one spouse can be conveyed to a third party only if the non-owner spouse joins in the conveyance." (footnote omitted)).

     Thus, while we do not decide the issue, we see no reason why the spouse of a vendor of homestead land may not assert as to the proceeds of the sale of such land the protections accorded by Article X, section 4 of the Florida Constitution.

allow those funds to enjoy the protection accorded by Article X, section 4. See Orange Brevard Plumbing & Heating Co., 137 So. 2d at 206.

While the Radhert Firm may have assumed that by virtue of Benjamin's agreement to pay the firm for representing him in the foreclosure suit from the proceeds of the sale of the marital home that he did not intend to reinvest the proceeds in another homestead, no such assumption could have been entertained as to Ruth who signed no such agreement. Indeed no showing was made below regarding Ruth's intentions with regard to the proceeds from the sale of the home until after the Radhert Firm sought to intervene. It was only after the firm sought to intervene, and Ruth re-asserted her claim that the property and its proceeds were not subject to the Radhert Firm's claim under Article X, section 4, that she sought an award of all of the proceeds claiming a desperate need for support.

Shortly thereafter, the escrowed funds were awarded solely to Ruth. At this juncture, the Radhert Firm no longer had any claim, contractual or otherwise, to support payment of its fee for representing Benjamin from the escrowed funds. This matter should have been at an end. Yet the Radhert Firm continued to pursue its claim against Ruth prolonging this matter and causing Ruth to incur substantial legal fees. On this record, we cannot agree that Ruth was not entitled to a section 57.105 award. See de Vaux v. Westwood Baptist Church, 953 So. 2d 677, 684 (Fla. 1st DCA 2007) (awarding attorney's fees under section 57.105 "[s]ince the

11

law applicable to this case is clear and well-settled, [the client] and his lawyer knew or should have known that the relief sought in the complaint and the arguments presented to this court asserting grounds for specific performance were not supported by the application of the law").

In sum, there being nothing new or questionable in long established protections afforded homestead property or the immutable principles of contract law, the firm should have known, either from the start or at the latest shortly after it was allowed to intervene, that the promise made by Benjamin could only be enforced against him and any of his non-exempt property. Having ignored these verities, the firm should rightly be held accountable for the fees Ruth incurred in defending against the untenable claim it continued to advance.

We therefore reverse the order denying Ruth's section 57.105 motion for a fee award and remand for an award of attorneys' fees to her.

Reversed and remanded.